Stephen RINDLEY, D.D.S., Plaintiff,

v.

Thomas GALLAGHER, as Secretary of the Department of Professional Regulation, Bruce Lamb, individually and in his official capacity, Julie Gallagher, individually, Rupert Quintin Bliss, D.D.S., individually, Joan R. Levy, individually, Chris C. Scures, D.D.S., individually, Richard Chance, Jr., D.D.S., individually, Sally Wiedetz, individually, Diana W. Dartland, individually, Robert Ferris, D.D.S., individually and in his official capacity as a member of the Florida Board of Dentistry, Richard Weiss, D.D.S., individually, Maxine Sindledecker, D.D.S., individually, Orin Mitchell, D.D.S., individually and in his official capacity as a member of the Florida Board of Dentistry, Michael Greene, Esquire, individually and in his official capacity as a member of the Florida Board of Dentistry, Edward Baines, D.D.S., individually and in his official capacity as a member of the Florida Board of Dentistry, Tom Kraemer, individually and in his official capacity as a member of the Florida Board of Dentistry, Fred Ackel, D.D.S., Donald Cadle, D.D.S., Richard J. Chichetti, D.D.S., William S. Robinson, D.D.S., Roberta A. Goodman and Kathy Stern, all in their official capacities as members of the Florida Board of Dentistry, East Coast Dental Society, John D. Tabak, D.D.S., Barbara Sims, Linda Staub, Marshall Brothers, D.D.S., and Leonard M. Sakrais, D.D.S., Defendants.

No. 88–761–CIV.

United States District Court,
S.D. Florida.

June 21, 1995.

Gary Gerrard, Coral Gables, FL, for plaintiff.

Stephanie A. Daniel, Asst. Atty. Gen., State Programs Branch, Paul J. Martin, Asst. Atty. Gen., Dept. of Legal Affairs–Civ. Div., Tallahassee, FL, for Bd. Member Defendants.

Holly Kelly Ennis, Rumberger, Kirk & Caldwell, Miami, FL, for the DPR and Secretary of DPR, Julie Gallagher & Bruce Lamb.

Sean Domnick, Gregory J. Willis, Walton Lantaff Schroeder & Carson, Miami, FL, for Marshall Brothers and Leonard Sakrais.

James J. Nosich, Miami, FL, for East Coast Dental, John Tabak, Barbara Sims & Linda Staub.

---

### ORDER ADOPTING IN PART REPORT AND RECOMMENDATION AND GRANTING SUMMARY FINAL JUDGMENTS (RELATING ONLY AND EXCLUSIVELY TO IMMUNITY)

ARONOVITZ, Senior District Judge.

THIS CAUSE came before the Court upon numerous motions of defendants for Summary Judgment, addressed upon reference to U.S. Magistrate Judge Barry L. Garber, and the issuance of the Magistrate's Report and Recommendation. Plaintiff, Stephen Rindley, D.D.S., and defendant Rupert Q. Bliss, D.D.S. have filed separate objections to the Report and Recommendation. The Court has heard oral argument on the issues of immunity and objections thereto. In this Order, the Court has limited its ruling exclusively to issues of immunity asserted in the various motions for summary judgment specifically by the following Board Member defendants:

RUPERT Q. BLISS, D.D.S.,
JOAN R. LEVY,
CHRIS C. SCURES, D.D.S.,
RICHARD CHACE, JR., D.D.S.,
SALLY WIEDETZ,
DIANA W. DARTLAND,
ROBERT F. FERRIS, D.D.S.,
RICHARD T. WEISS, D.D.S.,
MAXINE T. SINDLEDECKER, D.D.S.,
ORIN D. MITCHELL, D.D.S.,
MICHAEL STEVEN GREENE, ESQUIRE,
EDWARD F. BAINES, D.D.S.,
THOMAS C. KRAEMER,
FRED J. ACKEL, D.D.S.,
DONALD I. CADLE, D.M.D,
ROBERTA A. GOODMAN,
KATHY A. STERN,
RICHARD J. CHICHETTI, D.M.D, and
WILLIAM F. ROBINSON, D.D.S.

The Board Member defendants and the plaintiff, at the request of the Court, have likewise submitted and filed copies of the Court's Docket Sheets, noting all documents, motions and pleadings which have been filed in this case and which are relevant to the issues of immunity from damages in this cause. The Court has reviewed the aforegoing, in addition to the oral argument received. All other issues in the various motions for summary judgment and the U.S. Magistrate Judge's Report and Recommendation are reserved.

This case involves a cause of action by plaintiff, an advertising dentist, against various non-advertising dentists, private persons and the Florida Department of Professional Regulation and others. Plaintiff claims the defendants have conspired to selectively enforce disciplinary statutes regulating the practice of dentistry against him and other dentists who engage in commercial advertising and challenges the Department's disciplinary procedure of issuing "letters of guidance" without providing notice and opportunity to be heard.

The Board Member defendants have filed motions for summary judgment asserting, among other defenses, an entitlement to absolute quasi-judicial immunity and qualified immunity in this cause. In furtherance thereof, the Board Member defendants have requested a ruling on this threshold legal issue. If they are entitled to immunity herein, the Board Member defendants assert they are also entitled to dismissal in this action

without discovery. On the other hand, if the Board Member defendants are not entitled to immunity, then discovery may proceed against them.

### Law Applicable to the Immunity Issue

The U.S. Supreme Court has addressed the defense of qualified immunity asserted in a motion for summary judgment. *See Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). "Qualified immunity is a defense that must be pleaded by a defendant official." *Id.* at 231, 111 S.Ct. at 1793 (citing *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982)). "Once a defendant pleads a defense of qualified immunity, '[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.... Until this threshold immunity question is resolved, discovery should not be allowed.'" *Id.* (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738). In *Mitchell v. Forsyth*, the Supreme Court stated:

> *Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

█ Controlling law for this court as established by the Supreme Court in *Harlow*, *supra*, and its progeny, clearly recognizes that until the threshold immunity question is resolved, discovery should not be allowed. This obligates the court, upon presentation of the immunity defense by the parties, to rule first on the issue of immunity.

The parties have submitted proposals and objections regarding the formulation of a discovery schedule for the parties and such pleadings have been held in abeyance pending resolution of this matter.[1]

The Court having reviewed the Report and Recommendation and the objections thereto, with regard to the issues of immunity, *see* Report and Recommendation Pages 1553–1558, finding that no factual issues have been raised which would preclude summary judgment on the immunity issue, no objection asserted which would preclude ratification of the Report and Recommendation, and this court having reviewed the relevant case law, and being otherwise fully advised in the premises, it is thereupon

ORDERED and ADJUDGED that the Report and Recommendation is hereby **ADOPTED,** with regard to the issue of immunity, and the Motions for Summary Judgment filed herein relating only and exclusively to immunity issues by the respective Board Member Defendants are hereby **GRANTED** consistent with that portion of the Report and Recommendation.

**Summary Final Judgment thereon is hereby ENTERED** on behalf of all Board Member Defendants, except Rupert Q. Bliss, D.D.S., on the issue of immunity. As to Defendant Bliss, his Motion for Summary Judgment on the issue of immunity is **DENIED.**[2]

DONE and ORDERED.

### APPENDIX

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF FLORIDA

Stephen Rindley, D.D.S., Plaintiff,

v.

Thomas Gallagher, et al., Defendants.

### REPORT AND RECOMMENDATION

GARBER, United States Magistrate Judge.

THIS CAUSE is before the Court pursuant to an Order of Reference entered on

---

1. An Order setting a discovery schedule for the non-Board Member Defendants has likewise been issued and served upon the parties under even date herewith.

2. For the reasons why Defendant Bliss was excluded from the finding of immunity, *see* Report and Recommendation Pages 1556–1557.

April 26, 1993 by the Honorable Sidney M. Aronovitz, Senior United States District Court Judge. The following Report and Recommendation is hereby submitted on: 1) Defendants Department of Professional Regulation and Secretary of the Department of Regulation's Motion for Summary Judgment (D.E. # 174); 2) Defendant Rupert Q. Bliss's Motion for Summary Judgment (D.E. # 183); 3) Defendants Chris C. Scures, Joan R. Levy, Richard Weiss, and Orin Mitchell's Motion for Summary Judgment (D.E. # 184); 4) Defendants Richard J. Chichetti, William F. Robinson, Donald I. Cadle, Kathy A, Stern, Fred J. Ackel and Roberta Goodman's Motion for Summary Judgment (D.E. # 185); 5) Defendant Edward F. Baines, Richard Chace, Diana Walworth Dartland, Robert F. Ferris, Michael Steven Greene; Thomas C. Kraemer; Maxine T. Sindledecker and Sally Wiedetz's Motion for Summary Judgment (D.E. # 186); 6) Defendants Julie Gallagher and Bruce Lamb's Motion for Summary Judgment, filed February 17, 1993; and 7) Defendants Marshall Brothers and Leonard M. Sakrais's Motion for Summary Judgment (D.E. # 205).

## BACKGROUND

Plaintiff, an advertising dentist, brings this action against various non-advertising dentists, private persons and the Department of Professional Regulation ("DPR") claiming that defendants have conspired to selectively enforce disciplinary statutes against him and other dentists who engage in constitutionally protected commercial speech advertising. (Am.Comp. at ¶ 160). Plaintiff seeks monetary, declaratory and injunctive relief pursuant to 42 U.S.C. Sec. 1983 for the alleged violation of his First, Fifth and Fourteenth amendment rights. Specifically, Plaintiff contends that the DPR is more likely to conduct field investigations, as opposed to desk investigations of advertising dentists (Am.Comp. ¶ 161(a)); the DPR is more likely to find that "probable cause" exists to believe that a violation by an advertising dentist has occurred than by non-advertising dentist (Am.Comp. at ¶ 161); the DPR is more likely to recommend, and the Board of Dentistry is

more likely to authorize, the filing of administrative complaints against advertising dentists that non-advertising dentists (Am.Comp. at ¶ 161(f)); and that the DPR is more likely to delay in the prosecution of advertising dentists than non-advertising dentists. (Am. Comp. ¶ 161(h)). In support of these claims, Plaintiff has enumerated forty three allegedly baseless claims that have been brought against him which have not resulted in a finding that the plaintiff has, in fact, committed a violation of any dental regulation. (Am.Comp. pp 7–28)

Plaintiff's Amended Complaint contains six counts: Count I seeks injunctive relief against the selective enforcement of laws against advertising dentists; Count II seeks damages for selective enforcement of disciplinary statutes; Count III seeks damages for an alleged conspiracy to selectively enforce disciplinary laws; Count IV seeks injunctive relief against the DPR and the Board of Dentistry to prevent the use of "letters of guidance" against the plaintiff; Count V seeks damages against various defendants for their use of letters of guidance; and Count VI seeks declaratory relief regarding the interpretation of Florida Statute Section 455.225(3).

## DISCUSSION

### A. Standard of Review

Summary Judgment is mandated pursuant to Rule 56(c) of the Federal Rules of Civil Procedure if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). At the summary judgment stage, the trial court's function is "not to weigh the evidence and determine the truth of the matter but to determine whether there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party." *Dees v. City of Miami*, 747 F.Supp. 679 (S.D.Fla.1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The movant has the initial burden of establishing the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party's burden is met, "the adverse party 'must set forth specific facts showing there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)).

In reviewing a motion for summary judgment, the trial court must consider all the evidence in the light most favorable to the non-moving party. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604–05, 26 L.Ed.2d 142 (1970). The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967).

The non-moving party, however, may not "rest upon the mere allegations and denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If "the non-moving party brings forth evidence in support of its position on an issue on which it bears the burden of proof at trial that is 'merely colorable, or not significantly probative, then summary judgment may be granted.'" *Dees,* 747 F.Supp. at 683 (quoting *Anderson,* 477 U.S. at 249–50, 106 S.Ct.

at 2510–11). Further, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

### B. Statute of Limitations

■ Many of the individual defendants move for summary judgment claiming that the Plaintiff's claims are barred by the statute of limitations because the allegedly wrongful acts that they took against the defendant occurred more than four years ago. The parties are in agreement that the applicable statute of limitations is four years.[1]

■ Plaintiff, however, asserts that the defendants actions constitute not only a conspiracy, but a "continuing violation[2]" and therefore, because at least some of the acts of which he complains occurred within the applicable statute of limitations, his claims are not time barred.

■ To establish a continuing violation, the plaintiff must show a substantial nexus between the time barred acts and the timely asserted acts. *Robinson v. Caulkins Indiantown Citrus Co.,* 701 F.Supp. 208, 211 (S.D.Fla.1988) (citations omitted).

> To determine whether such a nexus exists, court have looked to three factors which, while not exhaustive, are instructive: first, the subject matter of the discrimination; second, the frequency of the occurrences; and third, the degree of permanence of the violation (i.e., if the violation should trigger an employee's awareness of her rights under the statute).

*Id.* The Court will consider these three factors in determining whether a portion of Plaintiff's claims are time barred.

---

1. The United States Supreme Court has held that courts entertaining claims brought under 42 U.S.C. § 1983 should borrow the state statute of limitations for personal injury actions most analogous to the claim. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). When the state has more than one statute of limitations governing personal injury, then the general or residual statute of limitations should apply. *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Accordingly, pursuant to Florida Statute § 95.11 the statute of limitations applicable to general personal injury is four years.

2. The undersigned notes that the defendants do not argue that the "continuing violation" doctrine does not apply to the type of action the Plaintiff is attempting to assert, only that the Plaintiff has not satisfied the requirements of the doctrine.

In the instant case, the subject matter of the alleged discrimination is identical: Plaintiff claims that in each instance the defendants selectively enforced regulatory statutes against him in an effort to suppress his constitutionally protected commercial speech. *Cf. Robinson*, 701 F.Supp. at 211 (fact that initial wrongful act was one of sexual harassment and subsequent act was one of racial discrimination militated against a finding of continuing violation).

■ Second, the undersigned concludes that the alleged actions were sufficiently frequent to establish a continuous violation. The Plaintiff alleges that the defendants' selective enforcement arises out of a series of over forty complaints filed against him which were investigated, and in some instances prosecuted, over a period of approximately eight years. (Am.Comp. ¶ 1). *Cf. Robinson*, 701 F.Supp. at 211 (three actions in over fifteen years are not sufficiently frequent to establish continuing violation).

■ With respect to the third factor, defendants argue that Plaintiff must have been aware of the actions taken against him. For example, Plaintiff received the letters of guidance that were issued against him and, according to Florida's government in the sunshine law, the record of the DPR and Board were made public ten days after a finding of probable cause. Plaintiff responds that, although he may have been aware of the actions taken against him, he was unaware that they were the result of a conspiracy lodged against him in an effort to suppress his constitutionally protected free speech.[3] The undersigned cannot conclude, on the record as it now stands that, as a matter of law, Plaintiff should have been "alerted" to "protect his rights" when the original acts occurred. *Conlin v. Blanchard*,

890 F.2d 811 (6th Cir.1989). To state a claim for selective prosecution, the Plaintiff must allege, *inter alia*, that the government's selective prosecution is motivated by constitutionally impermissible motives such as racial or religious discrimination or his exercise of constitutional rights. *Owen v. Wainwright*, 806 F.2d 1519, 1523 (11th Cir.1986). Therefore, to the extent that Plaintiff did not know, or could not have known, that the actions of the defendants were impermissibly motivated, he was not "on notice that [his] civil rights had been violated." *Robinson*, 701 F.Supp. at 211. It is unclear, at best, how the Plaintiff should have known that the defendants actions against him were motivated by the fact that he had exercised his constitutionally protected free speech rights. Accordingly, after weighing the three factors set forth by the Court in *Robinson*, the undersigned concludes that the Plaintiff has sufficiently alleged a continuous violation and therefore the statute of limitations does not bar his claims.

## C. Standing

■ In Count I, Plaintiff seeks injunctive relief against the DPR and the Board of Dentistry for selective enforcement of disciplinary laws against advertising dentists. The defendants DPR, the Board of Dentistry, Julie Gallagher, and Bruce Lamb contend that summary judgment should be granted as to Count I because the Plaintiff lacks standing to bring suit for injunctive relief.[4]

■ Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases or controversies." The standing doctrine is one aspect of this case or controversy requirement. *Flast v. Cohen*, 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968). One of the purposes behind the standing requirements is to "assure that concrete adverseness which

---

3. Plaintiff asserted this argument orally at the hearing before the undersigned on the pending motions for summary judgment.

4. Plaintiff asserts that the arguments advanced by the DPR and the Secretary have been previously rejected by this Court and therefore, their motion for summary judgment should be denied solely on that ground. The undersigned disagrees. To support his position, Plaintiff points

to a September 14, 1992 Order entered by the Honorable Sidney M. Aronovitz denying various motions to dismiss (D.E. # 135). The undersigned, however, does not interpret this Order as an adjudication of the merits of the defendants' arguments inasmuch as the motions to dismiss were denied "without prejudice" and the Order did not discuss the merits of the defendants' respective positions.

sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

A plaintiff must meet three requirements to have Article III standing. First, where, as here, the plaintiff seeks declaratory and injunctive relief, he must demonstrate that he is likely to suffer future injury. *Cone Corp. v. Florida Dept. of Transp.,* 921 F.2d 1190, 1204 (11th Cir.1991). This requirement has been deemed "most important" in determining whether plaintiff has standing. *Id.* To meet this requirement, a plaintiff must present specific concrete facts showing that the challenged conduct will result in a demonstrable, particularized injury to the plaintiff so that he personally will benefit in a tangible way from court action. *Id.* The injury must be "real and immediate; not hypothetical." *Id.* Second, plaintiff must show that he is likely to suffer such injury at the hands of the defendants: that is there must be a "fairly traceable nexus between the threatened deprivation of the constitutional right and the defendant." *Simon,* 426 U.S. at 38, 96 S.Ct. at 1924. Finally, plaintiff must demonstrate that the relief that plaintiff seeks will prevent such injury from occurring.

Accordingly, to meet these first two requirements, a plaintiff seeking declaratory relief must demonstrate that the "defendant is likely to injure that plaintiff." *Cone Corp.,* 921 F.2d at 1205. Past injury from alleged unconstitutional conduct does not in itself show that a present case or controversy exists between the plaintiff and defendant if that past injury is unaccompanied by current adverse effects. *Lynch v. Baxley,* 744 F.2d 1452 (11th Cir.1984). Past wrongs do, however, constitute evidence bearing on whether there is a real and immediate threat of repeated injury which could be averted by the issuing of an injunction. *Id.*

Defendants assert that because all of the actions that they are accused of necessarily originated with the filing of complaints by third parties, it is pure conjecture to suggest that unknown future patients will file complaints with the DPR and thereby enable the defendants to continue to engage in their allegedly selective enforcement of the disciplinary procedures. The undersigned disagrees. Although past wrongs do not, in and of themselves, show that a present case or controversy exists, they do constitute evidence of a real threat of repeated injury. *Lynch v. Baxley,* 744 F.2d 1452 (11th Cir. 1984). In the instant case, plaintiff has alleged numerous instances of selective enforcement ranging over a period of eight years involving at least forty complaints. *See Cone Corp. v. Florida Dept. of Transportation,* 921 F.2d 1190, 1205 n. 48 (11th Cir. 1991) (specific instances in the past where the defendant has injured the plaintiff constitute evidence to establish that defendant is likely to injure plaintiff in future). Further, at oral argument on the pending summary judgment motions, the parties acknowledged that plaintiff was still subject to at least one administrative proceeding. Moreover, Plaintiff claims that several of the defendants conspired to encourage consumers to file complaints against advertising dentists like the plaintiff. (Am.Comp. ¶ 172). Against this background, it is not at all unlikely that third-party complaints will continue to be filed against the plaintiff thereby presenting the defendants with an opportunity to engage in the alleged selective enforcement. *See Lynch v. Baxley,* 744 F.2d at 1457 (plaintiff who had been involuntarily committed twice in the past three years had standing to challenge defendant's detention policy).

Next, defendants contend that Plaintiff has failed to state a cause of action for selective enforcement of Florida's statutes and administrative code. In order to state a claim of selective enforcement, Plaintiff must make a prima facie showing that he has been singled out for prosecution although others similarly situated, who have committed the same acts, have not been prosecuted. *Owen v. Wainwright,* 806 F.2d 1519, 1523 (11th Cir.1986). Second, he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious. *Id.* This invidiousness requirement can be met if the defendant establishes that the government's selective prosecution

is motivated by constitutionally impermissible motives such as racial or religious discrimination or his exercise of constitutional rights. *Id.* An impermissible motive or discriminatory purpose implies that the decisionmaker selected or reaffirmed a particular cause of action "at least in part because of and not merely 'in spite of' its adverse effects upon an identifiable group." *Wayte v. United States,* 470 U.S. 598, 610, 105 S.Ct. 1524, 1532, 84 L.Ed.2d 547. Here, Plaintiff has alleged that the defendants engaged in numerous discriminatory practices due to the fact that Plaintiff has exercised his first amendment rights through commercial advertising. For example, the Plaintiff has alleged that the DPR is more likely to conduct field investigations, as opposed to desk investigations, of advertising dentists (Am.Comp. ¶ 161(a)); the DPR is more likely to find that "probable cause" exists to believe that a violation by an advertising dentist has occurred than by non-advertising dentist (Am.Comp. at ¶ 161); the DPR is more likely to recommend, and the Board of Dentistry is more likely to authorize, the filing of administrative complaints against advertising dentists than non-advertising defendants. The undersigned concludes that the Plaintiff has sufficiently stated a cause of action for selective enforcement inasmuch as he has alleged that the defendants more rigorously enforced regulatory statutes against him as a member of an identifiable group (advertising dentists) than against non-advertising dentists. More-

over, Plaintiff has alleged that the motivation for this selective enforcement was the constitutionally impermissible end of suppressing constitutionally protected commercial speech.

■ Defendants next contention is that Count IV of the Amended Complaint is now moot due to significant statutory revisions. Essentially, Count IV alleges that Florida Statute Section 455.225(3) [5] is unconstitutional under the Fifth and Fourteenth Amendments because it authorizes the issuance of letters of guidance without due process of law, i.e., notice and an opportunity to be heard. Plaintiff contends that because the letters of guidance are issued only upon a finding of probable cause and because the letters are subsequently published in a professional newsletter that the letters could damage his professional and business reputation.[6] Defendants argue that under a revised version of Section 455.225(4), letters of guidance would be issued in lieu of a finding of probable causes and would not be published.[7] This version of Section 455.225(4), however, has lapsed and been replaced with a version that is similar in all material aspects to the one of which Plaintiff complains. Under the latest version of Florida Statute Section 455.225(4), a letter of guidance represents a finding of probable cause and can be published.[8] Therefore, Count IV is not mooted by the temporary legislative amendment of 455.225(4).[9] *Naturist Soc., Inc. v. Fillyaw,* 958 F.2d 1515, 1520 (11th Cir.1992) ("Where a superseding statute leaves objec-

**5.** In 1989, a new subsection (3) was inserted, thereby moving each existing subsection up one number. What was complained of in subsection (3) is now the body of subsection (4), and will be referred to as such throughout the remainder of this Report and Recommendation. *See,* Florida Statute § 455.225, Historical and Statutory Notes.

**6.** "If the probable cause panel finds that probable cause exists, it shall direct the department to send the licensee a letter of guidance or to file a formal complaint against the licensee." Florida Statute § 455.225(4) *(Text of subsection (4) as renumbered in Laws 1989, c. 89–162, § 3, effective July 1, 1989 ).*

**7.** *"In lieu of a finding of probable cause,* the probable cause panel, or the department when there is no board, may issue a letter of guidance

to the subject. If the probable cause panel finds that probable cause exists, it *shall* direct department to file a formal complaint against the licensee." (emphasis added) Florida Statute § 455.225(4) *(Text of subsection (4) as amended by Laws 1992, c. 92–149, § 21, effective October 1, 1992 ).*

**8.** "If the probable cause panel finds that probable cause exists, it shall direct the department or the agency to send the licensee a letter of guidance or to file a formal complaint against the licensee." Florida Statute § 455.225(4) *(Text of subsection (4) as amended by Laws 1992, c. 92–33, § 54, effective July 1, 1994 ).*

**9.** Compare the language in footnote 6 and footnote 8 of this Report and Recommendation. With the exception of "or the agency," the new revision mirrors the former subsection.

tional features of the prior law substantially undisturbed, the case is not moot."); *see also, Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Commissioners,* 622 F.2d 807, 824 (5th Cir.1980).

■ Likewise, defendants contend that Count VI is now moot due to statutory revision. In Count VI, Plaintiff sought injunctive relief against the Secretary for requiring subjects of investigations to waive confidentiality in order to ascertain from the defendant the source and substance of the complaints filed against them. Pursuant to statutory changes, however, Florida Statute Section 455.225(1) (1991) now requires the DPR to furnish the person under investigation with a copy of the complaint and the documents which resulted in the initiation of the investigation. Plaintiff concedes that this statutory revision affords him the relief he sought in Count VI. (Pl.'s Resp. (D.E. # 179) at ¶ 20). Accordingly, Plaintiff's claims under Count VI are now moot and summary judgment in favor of the defendants as to Count VI is appropriate.

■ Plaintiff, in turn, claims that because this statutory change has afforded him with the relief he sought, he is a prevailing party entitled to attorneys fees. A party may "prevail and be entitled to attorneys fees when remedial action by the Defendant effectively moots the controversy subsequent to the filing of the lawsuit." *Dunn v. The Florida Bar,* 889 F.2d 1010, 1013 (11th Cir. 1989). The party seeking fees must show that the defendant has acted in response to Plaintiff's lawsuit. Here, the Plaintiff has made no showing, nor alleged any facts, to demonstrate that the Florida legislature, when it revised Section 455.225(1), was acting in response to his litigation filed against the Secretary of the DPR. If the Plaintiff is able to make such a factual assertion, then such a claim should more properly be brought in a motion for attorney's fees. Accordingly, Plaintiff is not presently entitled to attorney's fees with respect to Count VI.

To summarize, the undersigned finds that the Plaintiff has standing to bring a claim for injunctive relief against the Secretary and that plaintiff has in fact stated a claim for selective enforcement in Count I. Count IV is likewise sufficient. Count VI, however, should be dismissed due to the fact that statutory changes have afforded the Plaintiff the relief he sought and his claim is therefore moot.

■ The undersigned notes that both Plaintiff and the DPR agree that the DPR as a state agency is immune from suit under the Eleventh Amendment. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Schopler v. Bliss,* 903 F.2d 1373 (11th Cir.1990). Accordingly, summary judgment should be granted in favor of the DPR. The Secretary of the DPR, in his official capacity, however, remains a proper party.

■ Finally, most individual board member defendants also argue that the Plaintiff lacks standing to bring a claim for injunctive relief against them because they are no longer members of the Board. The undersigned agrees, and accordingly, summary judgment should be granted on Counts I and IV in favor of the following individual defendants: Ferris, Ackel, Baines, Cadle, Mitchell, Goodman, Stern, Kraemer, and Greene.

*D. Absolute Immunity*

The individual defendants claim that they are entitled to absolute immunity from suit because the actions that they are alleged to have taken against the defendant were undertaken in their prosecutorial or quasi-judicial roles.

■ Judges performing judicial acts within their jurisdiction are granted absolute immunity from damage suits based on the rationale that the judicial process must be free from the harassment and intimidation that may result from actions filed by disgruntled litigants. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978). This immunity has also been afforded to prosecutors for activities "intimately associated with the judicial process" such as initiating and pursuing a criminal prosecution. *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976). Likewise, absolute im-

munity has been extended to "agency officials performing certain functions analogous to that of a prosecutor" because administrative adjudication is "functionally comparable" to the judicial process. *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978).

In determining whether absolute quasi-judicial immunity is appropriate, courts have examined the following three factors, derived from *Butz v. Economou:*

1) Are the official's functions similar to those involved in the judicial process?;

2) Are the officials actions likely to result in damages lawsuits by disappointed participants? and

3) Do sufficient safeguards exists to protect against unconstitutional conduct?

*Kutilek v. Gannon*, 766 F.Supp. 967, 972 (D.Kan.1991).

The undersigned will consider factors numbered two and three first and then consider factor number one with respect to the various defendants.

■ Factor number two clearly favors a finding of absolute immunity. It is not difficult to imagine that issuing a letter of guidance or imposing a disciplinary sanction against a dentist for a violation of professional standards would result in a damages claim. A finding of absolute immunity will therefore insure that "individual board members perform their functions for the public good without harassment or intimidation." *Horwitz*, 822 F.2d at 1515.

■ Factor number three also favors a finding of absolute immunity because sufficient safeguards exist to protect a dentist's constitutional rights. For example, pursuant to Florida Statutes Sections 455.225(5) and 120.57, a dentist may request and receive a formal evidentiary hearing when a panel determines that probable cause exists to find that the licensee has committed a statutory violation and issues a letter of guidance. *See Brown v. Department of Professional Regulation*, 602 So.2d 1337 (Fla. 1st DCA 1992).[10] This formal evidentiary hearing provides for the cross-examination of witnesses, an official transcript and written findings of fact and law by the hearing officer. Fla.Stat. § 120.57. Moreover, a dentist may appeal decisions of the DPR to Florida's District Courts of Appeal. *See id. Brown*, 602 So.2d at 1338–39. Finally, pursuant to Florida Statute § 57.111, a plaintiff may seek attorneys fees for actions filed against them by the DPR or Board without substantial justification. These procedures sufficiently safeguard against unconstitutional conduct without reliance on private damages lawsuits.[11]

The undersigned will now consider whether the functions performed by the various groups of defendants warrant the protection of absolute immunity.

### 1. The DPR Attorneys

■ Plaintiff seeks damages against two attorneys employed by the DPR: defendants Julie Gallagher and Bruce Lamb. Plaintiff's claims against Gallagher fall generally into four categories: 1) that she issued "letters of guidance" that were factually false (Am. Comp.P. 37, 50, 81, 96); 2) that she issued letters of guidance after the closing of certain cases (Am.Comp.P. 36, 37, 42, 49, 50); 3) that she requested a supplemental investigation in a case where she was aware that the Plaintiff was not responsible for all of the conditions of which the patient was complaining (Am. Comp.P. 63); and 4) that she reopened an investigation to make charges on other grounds after receiving a consultation report.

---

**10.** Although the availability of such a formal hearing has not always been obvious, *see Brown*, 602 So.2d at 1340, discussing *Department of Professional Regulation v. Toledo Realty, Inc.*, 549 So.2d 715 (Fla. 1st DCA 1989), it is uncontested that the Plaintiff never requested a formal evidentiary hearing.

**11.** The safeguards afforded in the instant case are similar to those provided in the case of *Kutilek v. Gannon*, 766 F.Supp. 967, 970–71 (D.Kan.1991). In *Kutilek*, a state medical board, after subpoenaing certain information and documents from a doctor, met outside of the presence of the doctor and ultimately decided to issue a public censure against him. The court concluded that sufficient safeguards existed to protect against unconstitutional conduct by the states administrative procedure act and the availability of judicial review. *Id.* at 970–71.

Plaintiff claims that defendant Lamb filed an additional count in an administrative complaint against the Plaintiff without a finding of probable cause on that particular count. (Am.Comp.P. 138).

■ The undersigned concludes that the issuance of letters of guidance by a DPR attorney is a quasi-judicial function and absolute immunity is therefore appropriate. Florida Statute Section 455.225(3) (now 455.225(4)) provides "If the probable cause panel finds that probable cause exists, it shall *direct* the department to send the licensee a letter of guidance or to file a formal complaint against the licensee. The department shall follow the direction of the probable cause panel regarding the filing of a formal complaint." Therefore, it is apparent that the issuance of a letter of guidance is, by statute, within defendant Gallagher's functions as a prosecutor. Here, Gallagher's function is somewhat analogous to that of a prosecutor writing letters to assist in post-trial sentencing. In *Allen v. Thompson*, 815 F.2d 1433 (11th Cir.1987), the Eleventh Circuit held that United States attorneys were entitled to absolute immunity when submitting reports containing allegedly false information about a prisoner to the U.S. Parole Commission. The Court noted that the act of submitting the report constituted a "duty [ ] assigned to the U.S. Attorney's office as part of its role in the prosecution and sentencing of federal cases." *Id.* at 1434. The court reasoned that although the acts were not "undertaken literally at the direction of the court, the activities were so intimately associated with the judicial phase of the criminal process as to cloak the prosecutors with absolute immunity from suit for damages." *Id.* Likewise, drafting letters of guidance was a "duty" imposed upon defendant Gallagher in her role as a DPR attorney. She drafted these letters at the direction of the probable cause panel. These letters of guidance are an integral part of

Florida's professional regulatory scheme, and the state official charged with issuing them should not be faced with the threat of retaliatory litigation for her fulfillment of the statutory mandates.

■ Plaintiff's attempt to liken Gallagher's conduct to that of the prosecutors in *Marx v. Gumbinner*, 855 F.2d 783 (11th Cir. 1988) who announced the discontinuation of a prosecution to the media and the prosecutors in *Mullinax v. McElhenny*, 672 F.Supp. 1449, 1453 (W.D.Ga.1987) who allegedly smeared the plaintiff's character following her acquittal is unpersuasive. Gallagher's issuance of the letters of guidance at the direction of the probable cause panel is unlike the situation where a prosecutor, on his or her own initiative, makes allegedly false statements to the media. There is, of course, no statutory mandate that a prosecutor make statements solely for the edification of the news media.[12]

■ Additionally, the fact that Gallagher may have issued letters of guidance after the official close of a particular case does not abrogate her entitlement to absolute immunity. Florida Statute 455.225(4) (see Am. Comp.P. 150) contemplates that upon a finding of probable cause, the probable cause panel will direct the DPR to issue a letter of guidance and no further action will be taken.

■ Next, Gallagher contends that she is entitled to absolute immunity for requesting additional investigations into particular complaints. The undersigned agrees. A prosecutor's role as advocate

> necessarily entails the development and evaluation of the case prior to the formal initiation of a prosecution. *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. Thus, a prosecutor is entitled to absolute immunity for the factual investigation necessary to prepare a case, including interviewing witnesses before presenting them to the grand jury.

---

**12.** The undersigned notes the distinction between documents that are drafted as part of a prosecutor's official duties (such as a letter of guidance or a criminal indictment) that later become public and those documents or statements that are not made for any prosecutorial purpose (e.g. a

news conference). The former would be afforded absolute immunity, while the latter would not. *See Henzel v. Gerstein*, 608 F.2d 654 (5th Cir. 1979) (absolute immunity applied to charges filed without jurisdiction).

*Mullinax v. McElhenney,* 817 F.2d 711, 715 (11th Cir.1987). The former fifth circuit extended absolute immunity to a "prosecutor's action of initiating, investigating and pursuing criminal prosecution." *Cook v. Houston Post,* 616 F.2d 791, 793 (5th Cir.1980). However, direct participation with the police in conducting a search "exceeds the prosecutor's necessary role in marshalling the facts of the case." *Id.* Here, Gallagher's request of a further investigation of certain complaints filed against the Plaintiff falls within her duties as a prosecutor. Prosecutors must be able to investigate, or direct others to investigate, the merits of a particular case. Moreover, there are no allegations that Gallagher personally took part in an investigation in an improper manner. Accordingly, Gallagher is entitled to absolute immunity for her actions of requesting further investigation into particular complaints filed against the Plaintiffs.

Plaintiff accuses Defendant Lamb of drafting a complaint containing a count for which no probable cause had been found. Specifically Plaintiff alleges that on one particular occasion, the panel found probable cause to believe that Plaintiff had violated Florida Statute Section 466.028(1)(bb), defined as "violation or repeated violation." Thereafter, Lamb filed an administrative complaint charging Plaintiff not only with violation of 466.028(1)(bb), but also with violation of 466.028(1)(d) for advertising in a false or deceptive manner. Defendant Lamb contends he was justified in including the additional count because the original third-party complaint on which he based his complaint indicated a possible advertising violation. Be that as it may, the filing of an administrative complaint is clearly within the prosecutorial function of a DPR attorney and Lamb is therefore entitled to absolute immunity. *See Henzel v. Gerstein,* 608 F.2d 654 (5th Cir.1979) (absolute immunity applies to the filing of baseless detainer or charges without jurisdiction).

Finally, the fact that Plaintiff alleges that the defendants have engaged in a conspiracy to deprive him of his constitutional rights through selective enforcement of disciplinary statutes does not deprive these defendants, who are otherwise entitled to absolute immunity for their actions, of that protection. *See Dykes v. Hosemann,* 776 F.2d 942, 946 (11th Cir.1985) (allegations that judge conspired to deprive defendant of constitutional rights did not abrogate judges absolute immunity); *see also Moses v. Parwatikar,* 813 F.2d 891, 893 (8th Cir.1987) (court appointed psychiatrist accused of conspiracy absolutely immune from suit). To defeat the doctrine of absolute immunity "by pleading a conspiracy would be to create an exception where none was intended." *Moses,* 813 F.2d at 893.

### 2. Members of the Board of Dentistry Probable Cause Panels

With respect to the members of the Board of Dentistry's probable cause panel, Plaintiff's primary complaint is that they issued findings of probable cause and directed the issuance of administrative complaints despite the fact that, in actuality, no probable cause existed to believe that the Plaintiff had committed the alleged violations. Making a determination that probable cause exists is a function "similar to those involved in the judicial process." *Kutilek,* 766 F.Supp. at 972. It involves evaluating information and issuing a factual and legal determination, both functions that are performed by the judiciary. Accordingly, the members of the Board of Dentistry probable cause panels should be granted absolute immunity for their actions in issuing findings of probable cause and directing the issuance of administrative complaints.[13]

The Plaintiff has further alleged that one defendant acted outside the scope of his duties as a member of the probable cause panel. Specifically, Plaintiff alleges:

---

13. To the extent that Plaintiff's complaint alleges that the members of the probable cause panel should be liable for any investigations that they directed, the members should likewise be afforded absolute immunity for the reasons discussed above with respect to Defendant Gallagher. *See also Kutilek,* 766 F.Supp. at 972 (executive director of medical board afforded absolute immunity for interviewing plaintiff and issuing subpoenas).

Defendant Bliss, who was prohibited by law from adjudicating any cause in which he had sat on the probable Cause Panel, nonetheless had—and boasted to a meeting of a west coast dental society that he had—"input" into the adjudicative phase of a case even though it was "illegal".

(Am.Comp. ¶ 172(h)). To the extent that Defendant Bliss was performing functions that were not the duty of a member of the probable cause panel, he should not be afforded absolute immunity. *Slavin v. Curry*, 574 F.2d 1256, 1264 (5th Cir.1978) (prosecutor not protected by absolute immunity for action that was outside scope of prosecutorial function).

Nor is Defendant Bliss entitled to qualified immunity with respect to his alleged influencing of the adjudicative phase of a case on which he had sat on the probable cause panel. The doctrine of qualified immunity generally protects government officials performing discretionary functions as long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The statements Plaintiff alleges that Defendant Bliss made to the dental society ("I do have some input, but its not legal") indicate that not only would a reasonable person have known that defendant Bliss's actions were illegal, but that defendant Bliss himself knew. Accordingly, Defendant Bliss is not entitled to qualified immunity for his alleged influence of the adjudicatory phase of cases on which he had sat as a member of the probable cause panel.

As presently pled, Plaintiff's allegation of Defendant Bliss's "illegal" action is contained in his conspiracy count. The undersigned concludes that the Plaintiff has adequately alleged a cause of action for conspiracy. To state a claim for civil conspiracy under Florida law, a plaintiff must allege: (1)

an agreement between two or more people to achieve an illegal objective, (2) an overt act in furtherance of the conspiracy, and (3) injury. *In re Sahlen Securities Litigation,* 773 F.Supp. 342, 375 (S.D.Fla.1991). Although Rule 9(b) does not list conspiracy as one of the causes of actions which must be pled with particularity, "plaintiffs must nevertheless provide some factual basis for the legal conclusion that a conspiracy existed." *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 660 F.Supp. 1362, 1372 (D.Conn. 1987). Additionally, to state a claim for conspiracy under Section 1983, "it is necessary that there has been an actual denial of due process or of equal protection by someone acting under state law." *Slavin v. Curry,* 574 F.2d 1256, 1261 (5th Cir.1978). Plaintiff alleges that the members of the probable cause panel, the DPR attorneys and private citizens conspired "to deprive the plaintiff equal protection of the laws, by inducing disciplinary action against advertising dentists in order to prevent and or eliminate competition from, and to interfere with the free exercise of constitutionally protected speech of plaintiff and advertising dentists through a policy of selective enforcement of the laws regulating the practice of dentistry in Florida." (Am.Comp. ¶ 171). Further, the Plaintiff has extensively chronicled alleged instances of said selective enforcement that could, in essence, only have been performed by a group acting in concert. The undersigned concludes that Plaintiff's allegations of conspiracy are sufficient to meet the standards set forth above. Accordingly, as to Count III, summary judgment should not be granted with respect to Defendant Bliss.

*3. Defendants Marshall Brothers and Leonard Sakrais*[14]

Defendant Marshall Brothers ("Brothers") and Leonard Sakrais (Sakrais), both dentists, served as consultants to the DPR for the purpose of making recommendations to the probable cause panel. In this sense, their activities are much like a court

**14.** Although defendants Brothers and Sakrais suggest that their motion for summary judgment should be granted by default because plaintiff failed to file any timely opposition, the undersigned declines to do so. In this district, motions

for summary judgment are not granted by default; rather, the court has an independent obligation to review the record to determine if the movant has met its burden. *Kinder v. Carson,* 127 F.R.D. 543 (S.D.Fla.1989).

appointed psychiatrist who conducts a competency evaluation and reports the findings to the court. Both are retained by a fact finding body to offer expertise in an effort to assist the fact-finder. Such activity is often granted the protection of absolute immunity. *See Moses v. Parwatikar*, 813 F.2d 891, 892, *cert. denied*, 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1987) (court appointed psychiatrist entitled to absolute immunity); *Bettencourt*, 904 F.2d at 785 (consultants and advisors to administrative boards granted absolute immunity); *Kutilek v. Gannon*, 766 F.Supp. 967, 973 (D.Kan.1991) (physicians retained by state medical board to serve as consultants regarding disciplinary actions). The court in *Kutilek*, 766 F.Supp. at 973, explained the rational behind such a grant of absolute immunity: "There exists a strong need for Board members, their administrative personnel and their retained expert witness to perform their respective roles without harassment or intimidation." *Id.* Accordingly, defendants Brothers and Sakrais are entitled to absolute immunity for providing recommendations to the probable cause panel regarding alleged professional violations by the Plaintiff.

### RECOMMENDATION

After careful consideration and for the foregoing reasons, the undersigned hereby RECOMMENDS that:

1) Defendants Department of Professional Regulation and Secretary of the Department of Regulation's Motion for Summary Judgment (D.E. # 174) be GRANTED IN PART and DENIED IN PART as follows:

A. GRANTED as to the Department of Professional Regulation; and

B. With respect to the Secretary: GRANTED as to Count VI, but DENIED in all other respects;

2) Rupert Q. Bliss's Motion for Summary Judgment (D.E. # 183) be DENIED as to COUNT III, but GRANTED in all other respects;

3) Defendants Chris C. Scures, Joan R. Levy, Richard Weiss, and Orrin Mitchell's Motion for Summary Judgment (D.E. # 184) be GRANTED;

4) Defendants Richard J. Chichetti, William F. Robinson, Donald I. Cadle, Kathy A. Stern, Fred J. Ackel and Roberta Goodman's Motion for Summary Judgment (D.E. # 185) be GRANTED;

5) Defendant Edward F. Baines, Richard Chace, Diana Walworth Dartland, Robert F. Ferris, Michael Steven Greene; Thomas C. Kraemer; Maxine T. Sindledecker and Sally Wiedetz's Motion for Summary Judgment (D.E. # 186) be GRANTED;

6) Defendants Julie Gallagher and Bruce Lamb's Motion for Summary Judgment, filed February 17, 1993 be GRANTED; and

7) Defendants Marshall Brothers and Leonard M. Sakrais's Motion for Summary Judgment (D.E. # 205) be GRANTED.

The parties have ten (10) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Sidney M. Aronovitz, Senior United States District Judge. *See* 28 U.S.C. § 636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.), *cert. denied*, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 15th day of August, 1994.